UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN BISHOP,

                  Plaintiff,

    v.

UNIVERSITY OF SCRANTON, et al.,

                  Defendants.

CIVIL ACTION NO. 3:22-CV-01831

(MEHALCHICK, J.)

## MEMORANDUM

Presently before the Court are two motions to dismiss respectively brought by Defendants the University of Scranton ("University") and the University of Scranton Faculty Affairs Counsel ("FAC") (collectively, "Defendants"). (Doc. 41; Doc. 44). On November 16, 2022, Plaintiff Benjamin Bishop ("Bishop") initiated this action by filing a complaint pursuant to 28 U.S.C. § 1331 and § 1343. (Doc. 1). On September 8, 2023, Bishop filed the operative second amended complaint, alleging claims pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C § 185. (Doc. 38). For the following reasons, Defendants' motions to dismiss shall be **GRANTED** and Bishop's claims **DISMISSED**. (Doc. 41; Doc. 44).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background and factual summary are derived from Bishop's second amended complaint. (Doc. 38). At all times germane to this action, Bishop was a tenured full-time professor at the University and a member of the bargaining unit represented by the FAC. (Doc. 38, ¶¶ 7, 20). All parties were bound by the provisions of the Faculty Handbook of the

University.[1] (Doc. 1, at 19- 115; Doc. 38, ¶¶ 8- 11, 41). The Faculty Handbook governs the

relationship between the University and its faculty, including the practices and policies for the

dismissal of a tenured professor. (Doc. 38, ¶¶ 11-12, 29, 35, 36). The Faculty Handbook also

contains the FAC's complaint and grievance process. [2] (Doc. 38, ¶¶ 41- 44). In response to

the COVID-19 pandemic, the University and the FAC implemented a policy called "Royals

Back Together" ("RBT policy"), which required students and faculty to both wear high-grade

masks and provide attestation that they had received the COVID-19 vaccination. (Doc. 38,

¶¶ 13, 14). Despite being fully vaccinated, Bishop alleges he was concerned about the ethics

of the policy and therefore took several measures to oppose it, including refusing to sign the

University's attestation form. (Doc. 38, ¶¶ 15, 17, 18). Bishop alleges he was terminated from

the University on May 10, 2022 because of his opposition, and without being able to appear

at his dismissal hearing or being offered due process. (Doc. 38, ¶¶ 27, 34, 36, 39). Bishop also

alleges that throughout his termination and his appeal, the FAC failed to fairly represent him.

(Doc. 38, ¶¶ 74-81).

On November 16, 2022, Bishop filed a complaint against the University, Provost

---

[1] Whereas Bishop failed to attach the Faculty Handbook as an exhibit to his second amended complaint despite referring it therein as "Exhibit A," the Court may still consider the document as a matter "incorporated by reference [and] integral to the claim." (Doc. 1, at 19-115; Doc. 38, ¶ 12); *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] According to Sec. 16.0 of the Faculty Handbook, faculty members are entitled to file allegations of violations of the Faculty Handbook with the FAC. (Doc. 1, at 57). This includes for matters related to termination. (Doc. 1, at 58). To make an allegation, the faculty member must first file a complaint with the FAC, which serves as the "initial allegation." (Doc. 1, at 58). This complaint is then investigated, and based on this investigation, the FAC seeks to resolve the matter with the complainant. (Doc. 1, at 58). If the complaint cannot be resolved, it progresses to the grievance stage. (Doc. 1, at 58). Grievances are dually investigation and resolution is again sought with the complainant. (Doc. 1, at 58). If the grievance cannot be resolved, it is submitted to arbitration, held under the voluntary arbitration rules of the American Arbitration Association. (Doc. 1, at 59).

Jeffrey Gingerich, and the FAC. (Doc. 1). The complaint was dismissed by this Court on July 17, 2023. (Doc. 31). Bishop filed the operative second amended complaint on September 8, 2023. (Doc. 38). Therein, Bishop alleges the following Counts: Count I – Breach of Contract in violation of 29 U.S.C. § 185 against the University ("Section 301 termination breach of contract claim") (Doc. 38, ¶¶ 55-62); Count II – Breach of Contract in violation of 29 U.S.C. § 185 against the University ("Section 301 due process breach of contract claim") [3] (Doc. 38, ¶¶ 63-73); and Count III – Breach of Duty of Fair Representative against the FAC ("fair representation claim") (Doc. 38, ¶¶ 74-81).

On October 5, 2023, the University filed a motion to dismiss the second amended complaint, as well as a brief in support. (Doc. 41; Doc. 42). On the same day, the FAC filed a motion to dismiss the second amended complaint pursuant to Rule 12(b)(6), as well as a brief in support. (Doc. 44; Doc. 45). On October 23, 2023, and October 24, 2023, respectively, Bishop filed briefs in opposition to Defendants' motions to dismiss. (Doc. 48; Doc. 49). The University filed a reply brief on November 16, 2023, and the FAC filed a reply brief on November 17, 2023. (Doc. 54; Doc. 55). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition. (Doc. 41; Doc. 42; Doc. 44; Doc. 45; Doc. 48; Doc. 49; Doc. 54; Doc. 55).

II.   **MOTION TO DISMISS STANDARDS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-

---

[3] Count I addresses the University's breach of the Faculty Handbook's dismissal terms when terminating Bishop; Count II addresses Bishop's right to due process throughout the termination process. (Doc. 38, ¶¶ 56, 64).

pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III.   **DISCUSSION**

In his second amended complaint, Bishop asserts claims pursuant to Section 301 of the LMRA. (Doc. 38). Section 301 provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). "When resolution of a state-law claim is substantially dependent upon the analysis

4

of the terms of a collective-bargaining agreement, that claim must either be treated as a [Section] 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). Because Bishop's breach of contract claims against the University are "substantially dependent" upon an analysis of the terms contained in the Faculty Handbook, a collectively bargained for agreement, his claims must be treated as Section 301 claims. (Doc. 1, at 19-115).

A claim brought under Section 301 may be "pure" or "hybrid." *Service Employees Int'l Union Local 36 v. City Cleaning Co.,* 982 F.2d 89, 94 n.2 (3d Cir. 1992). This case involves a "hybrid" claim, meaning it was brought by an employee against their employer for an alleged breach of a collective bargaining agreement and an alleged violation of the union's duty of fair representation.[4] *See Service Employees Int'l Union Local 36,* 982 F.2d at 94 n.2. To prevail on his "hybrid" Section 301 claim, a Bishop must show both (1) that the FAC violated its duty of fair representation, and (2) the University breached its collective bargaining agreement. *Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x 146, 148 (3d Cir. 2011) (quoting *Felice v. Sever,* 985 F.2d 1221, 1226 (3d Cir.1993)). Because these factors are "inextricably interdependent," Bishop must provide the University breached the Faculty Handbook in order to prevail on the breach of duty of fair representation claim, and *vice versa.* *Felice,* 985 F.2d at 1226 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981)). Considering this, while Bishop alleges specific Counts against the University and the FAC, his claims are interdependent. (Doc. 38, at 13-17). Accordingly, the University and the FAC's motions to dismiss raise many of the same issues and the Court will consider them together.

---

[4] A "pure" claim is one brought by a union against an employer. *Service Employees Int'l Union Local 36,* 982 F.2d at 94 n.2.

(Doc. 41; Doc. 44).

A.  BISHOP'S SECTION 301 DUE PROCESS BREACH OF CONTRACT CLAIM

Defendants argue that Bishop's Section 301 due process breach of contract claim is time-barred.[5] (Doc. 45, at 14-15; Doc. 45-2, at 21; Doc. 48, at 12; Doc. 54, at 5; Doc. 55, at 6). To bring a claim under Section 301, there is a six-month statute of limitations that starts as soon as the plaintiff receives notice the union will not proceed with their grievance. *See Albright v. Virtue*, 273 F.3d 564, 572-73 (3d Cir. 2001) (providing that the statute of limitations begins to run when the plaintiff receives notice that the union will not be proceeding with the grievance). While statute of limitations is technically an affirmative defense, it may be properly raised at the motion to dismiss stage when the defense is apparent from the pleadings. *See Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

In this case, while discussing the statute of limitations issue in their briefs, all parties rely on and refer to a May 3rd email received by Bishop from Provost Jeff Gingerich and the FAC Chair, Stacey Muir. ( Doc. 45, at 14-15; Doc. 45-2, at 21; Doc. 48, at 14; Doc. 55, at 6). This email is not referenced in the second amended complaint but is attached as an exhibit to the University's motion to dismiss.[6] (Doc. 45-2, at 21). In his brief in opposition, Bishop states

---

[5] The FAC first raises the statute of limitations affirmative defense in their reply brief, providing they did not assert this defense earlier because Bishop's second amended complaint did not provide the date that the FAC and University denied Bishop's due process grievance. (Doc. 55, at 4). However, because Bishop concedes his due process claim was not timely in his brief in opposition, the defense is apparent from his pleadings and the Court will consider the statute of limitations defense at this stage of the litigation.

[6] Even though typically on a motion to dismiss courts may not consider evidence presented outside of the pleadings without converting the motion to a summary judgment motion, an exception is made for "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

that he received the email on May 3rd and that the email informed him that the FAC would

not pursue his due process grievance. (Doc. 48, at 14). Accordingly, the email is indisputably

authentic, and the Court will therefore consider it in its statute of limitations determination.

*See Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91-92 (3d Cir. 2012) (finding no

reversible error where the district court used limited discoverable material for the purpose of

clarifying a statute of limitations question and dismissing a complaint); *see McNaney v.*

*Sampson & Morris Grp., Inc.,* No. 2:21-CV-1809, 2022 WL 1017388, at *4 (W.D. Pa. Apr. 5,

2022) (finding claims to be untimely after considering emails attached to defendants motion

to dismiss without converting the motion to a motion for summary judgment and pointing to

the fact that the plaintiff never disputed the authenticity of the emails).

Bishop asserts that the statute of limitations for his claims "began to run when he was

notified of the outcome of his FAC complaints and was made aware that the FAC would no

longer be pursuing his grievance." (Doc. 48, at 13). He concedes, "[a]dmittedly, Plaintiff

received a boilerplate response from FAC on May 3, 2022 that it would not pursue his

grievance related to the lack of due process afforded Plaintiff at his April 5, 2022 termination

hearing. Under the LMRA's six- month statute of limitations, this claim would be untimely."

(Doc. 48, at 14). Bishop then attempts to argue that his due process claims survive because,

despite the FAC's statement that they would not pursue them, Bishop reasserted a due process

claim in his termination complaint that was filed with the FAC on July 19, 2022.[7] (Doc. 48,

---

[7] Bishop attempts to argue that the due process complaints in his termination FAC
complaint differ from those asserted in his previous complaints which focused specifically on
his termination *hearing*. (Doc. 48, at 14-15). The Court does not find this argument
compelling, as May 3rd email should have made "the futility of further union appeals"
apparent to Bishop. (Doc. 48, at 14-15); *Scott v. Local 863, International Brotherhood of Teamsters,*
725 F.2d 226, 229 (3d Cir. 1984).

at 14-15). He contends that because his judicial complaint was filed with the district court on November 16, 2022, his due process claim contained in the July 19, 2022 FAC complaint is timely. (Doc. 48, at 14-15).

This argument fails. The Third Circuit has provided that "[i]f repeated requests to a union to institute a grievance were to perpetually toll the statute of limitations, despite the employee's belief that such requests were futile, the statutory time bar would be illusory." *Vadino v. A. Valey Engineers*, 903 F.2d 253, 262-63 (3d Cir. 1990). Applying this principle, Bishop's repeated attempt to assert a due process grievance within his July 19, 2022 FAC complaint is unavailing and failed to toll the statute of limitations for his due process breach of contract claim under Section 301. *See Vadino*, 903 F.2d at 262-63. Accordingly, Bishop's due process breach of contract claim is time-barred and thus **DISMISSED WITH PREJUDICE**.[8]

B. BISHOP'S FAIR REPRESENTATION CLAIM

Regarding Bishop's remaining Section 301 termination breach of contract claim, the parties dispute whether the FAC violated their duty to fairly represent Bishop. (Doc. 42, at 9; Doc. 45, at 17; Doc. 48, at 20; Doc. 49, at 19; Doc. 54, at 8; Doc. 55, at 10). The duty of fair representation imposes an obligation upon unions to "serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in

---

[8] Additionally, the Court previously analyzed Bishop's same due process claims on the merits and determined he had not plausibly alleged a due process violation in connection with his termination. (Doc. 30, at 18-19).

bad faith." *Vaca*, 386 U.S. at 190. "The mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious." *Bangura v. PA Soc. Servs. Union--SEIU 668*, No. CIV.A. 12-3110, 2012 WL 6628045, at *3 (E.D. Pa. Dec. 20, 2012) (quoting *Findley v. Jones Motor Freight*, 639 F.2d 953, 958 (3d Cir. 1981)). Instead, "proof of arbitrary or bad faith union conduct in deciding not to proceed with the grievance is necessary to establish lack of compliance with the fair representation." *Marrero v. Brin*, 536 F. App'x 270, 273 (3d Cir. 2013)

A union's actions will only be deemed arbitrary if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 471-472 (3d Cir. 2018) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Such a "'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (quoting *Air Line Pilots Ass'n Int'l*, 499 U.S. at 67). To show discrimination on the part of the union, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos*, 748 F. App'x at 472 (quoting *Addington v. U.S. Airline Pilots Ass'n*, 791 F.3d 967, 984 (9th Cir. 2015) (internal quotation marks omitted)). To show bad faith on the part of the union, a plaintiff must put forth "a showing of fraudulent, deceitful, or dishonest action." *Bakos*, 748 F. App'x at 472 (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)).

Bishop alleges the FAC violated its duty of fair representation because it "did not fairly and adequately represent [him] in his dispute with the University" because the FAC's "ideological views regarding COVID-19 and the University's response were not aligned" with

his.[9] (Doc. 38, ¶ 77; Doc. 48, at 19). Bishop further avers that "[b]ecause [he] was a conservatively-aligned faculty member who openly opposed RBT and did not belong to the union, FAC intentionally discriminated against [him] and treated him differently than other members of the bargaining unit." (Doc. 38, ¶ 79; Doc. 48, at 19). Lastly, Bishop states that the FAC acted in bad faith by refusing to allow Bishop to participate in his hearing and instead lobbying for an officer's "close friend" to takeover Bishop's teaching position. (Doc. 38, ¶ 49; Doc. 48, at 19).

In their brief in support, the FAC makes the following arguments: Bishop failed to allege the FAC acted discriminatorily against him; the FAC acted reasonably per their interpretation of the Faculty Handbook; and a denial of Bishop's previous grievances does not constitute evidence that the FAC acted "arbitrarily, capriciously, or in bad faith in denying the grievance protesting his discharge." (Doc. 42, at 15-16). The University argues, "The FAC's decision not to pursue arbitration of [Bishop's] grievance for wrongful termination was not arbitrary (and certainly not outside the "wide range of reasonableness") because termination was explicitly identified in the Plan as a consequence of non-compliance and, as explained above, is not a violation of the Faculty Handbook." (Doc. 45, at 17-18).

In this case, there are notably few facts alleged in the second amended complaint to support a claim that the FAC violated their duty of fair representation beyond "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, 908 (3d Cir.1997). First, the Court agrees that Bishop has failed to set forth sufficient allegations from

---

[9] As the Court has already held the FAC did not violate their duty to fair representation as to his dismissal hearing and investigation, the Court will not opine on this issue again. (Doc. 30, at 26). Instead, the Court will focus its analysis on the complaint and grievance Bishop filed with the FAC after his appeal of his termination was denied on July 19, 2022.

which the Court can draw a reasonable inference that the FAC acted arbitrarily. (Doc. 38);

*see Bakos*, 748 F. App'x at 472. There are no facts in the second amended complaint that

suggest the FAC acted outside the "wide range of reasonableness" afforded to unions.

*Marquez*, 525 U.S. at 46. Second, Bishop has failed to allege the FAC acted in a way that was

discriminatory because he failed to show that the FAC's handling of his termination grievance

was infected by conduct that was "'intentional, severe, and unrelated to legitimate union

objectives.'" *Bakos*, 748 F. App'x at 472 (quoting *Addington,* 791 F.3d at 984.). Specifically,

beyond just saying so, he failed to allege he was treated differently than other members of the

bargaining unit who also intentionally violated the RBT policy by refusing to attest to their

vaccination status.[10] (Doc. 38, ¶¶ 51, 79); *see Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d

363, 374, 375 (E.D. Pa. 2015) (providing that a complaint which alleges specific instances

where similarly situated individuals were treated differently by a union than plaintiff is

sufficient to survive a motion to dismiss). Lastly, Bishop has failed to allege the FAC acted in

bad faith as he has not specified any fraudulent or deceitful conduct by the FAC in

conjunction with its handling of his termination grievance.[11] (Doc. 38).

---

[10] In his second amended complaint, Bishop alleges that, unlike him, several named colleagues who violated the RBT policy by being "unmasked on campus" were not disciplined. (Doc. 38, ¶¶ 21-22). However, he does not allege that he was treated differently than other colleagues who refused to attest to their vaccination status or that the FAC's actions were unrelated to legitimate union objectives. (Doc. 38); *see Bakos*, 748 F. App'x at 472. He also fails to present facts supporting his alleged disparate treatment was motivated by his conservative beliefs. (Doc. 38); *see Bakos*, 748 F. App'x at 472. For that reason, he has failed to allege he was discriminated against by the FAC for his ideological views.

[11] To the extent that Bishop avers the FAC had a conflict of interest influencing their decision to deny Bishop's grievance, as this Court has previously stated, "[t]here is no definitive statement or other evidence in Bishop's regarding whether the FAC did in fact demonstrate a conflict of interest. *Hernandez v. United Steel Workers Ass'n*, No. 1:10-CV-1350, 2010 WL 5092979, at *4 (M.D. Pa. Dec. 8, 2010)." (Doc. 30, at 26). As Bishop's second

As Bishop has failed to allege the FAC handled his termination grievance in a way that was arbitrary, discriminatory, or in bad faith, he has failed to allege the FAC violated its duty to fair representation. (Doc. 38); *see Bakos,* 748 F. App'x at 472 (finding the district court properly dismissed a claim for a breach of the duty of fair representation where plaintiff failed to allege Defendants had acted arbitrarily or in bad faith). (Doc. 38). Accordingly, his fair representation claim is **DISMISSED WITHOUT PREJUDICE**. (Doc. 41; Doc. 42); *see Stouffer v. Union R.R. Co., LLC.*, No. 2:20-CV-00133-RJC, 2021 WL 1197528, at *8 (W.D. Pa. Mar. 30, 2021) (dismissing a breach of duty of fair presentative claim where plaintiff's allegations were largely based on labels and conclusions).

C.   BISHOP'S SECTION 301 TERMINATION BREACH OF CONTRACT CLAIM

Finally, the parties dispute whether Bishop's termination violated the Faculty Handbook. (Doc. 38, ¶¶ 74-81; Doc. 42, at 12-13; Doc. 45, at 16-19; Doc. 48, at 9-21; Doc. 49, at 9-21; Doc. 54, at 8-15). As discussed *supra*, because this breach of contract claim is a "hybrid" claim under Section 301, Bishop must show both (1) that the union violated its duty of fair representation, and (2) the employer breached the collective bargaining agreement. *Johnson v. Laundry Workers LCL 141 & Agents,* 419 F. App'x 146, 148 (3d Cir. 2011). Because Bishop has failed to allege the FAC violated its duty of fair representation, he cannot prevail on his claim that the University breached the Faculty Handbook and therefore his Section 301 termination breach of contract claim must be **DISMISSED WITHOUT PREJUDICE**. *See Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x at 148 (affirming the district court's decision that because a plaintiff could not establish a breach of the collective

---

amended complaint fails to provide additional factual support that the FAC demonstrated a conflict of interest, this argument again fails. (Doc. 38, ¶ 41).

bargaining agreement at issue, she could not maintain a claim for breach of the duty of fair representation).

    D.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Bishop's breach of duty of fair representation claim and Section 301 termination breach of contract claim are dismissed without prejudice. The Court is mindful of the Supreme Court's mandate that "where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation, complaints should be construed to avoid dismissals and the plaintiff at the very least should be given the opportunity to file supplemental pleadings unless it appears beyond doubt that he cannot state a good cause of action." *Hernandez v. United Steel Workers Ass'n*, No. 1:10-CV-1350, 2010 WL 5092979, at *5 (M.D. Pa. Dec. 8, 2010) (quoting *Czosek v. O'Mara,* 397 U.S. 25, 27 (1970)). Therefore, the Court will grant Bishop leave to file a final, third amended complaint in an attempt to cure the deficiencies outlined herein in regard to these claims. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Grayson*, 293 F.3d at 108.

**IV.**   **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss (Doc. 41; Doc. 44) are **GRANTED**. Bishop shall have 14 days to file a third amended complaint setting forth

allegations in support of this civil action against Defendants and curing the deficiencies outlined herein.

An appropriate Order follows.

BY THE COURT:

Dated: April 26, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**