UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENJAMIN BISHOP,<br><br>                Plaintiff,<br>    v.<br><br>UNIVERSITY OF SCRANTON, et al.,<br><br>                Defendants. | CIVIL ACTION NO. 3:22-CV-01831<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court are motions to dismiss brought by Defendants the University of Scranton ("University") and the University of Scranton Faculty Affairs Counsel ("FAC") (collectively, "Defendants"). (Doc. 64; Doc. 66). On November 16, 2022, Plaintiff Benjamin Bishop ("Bishop") initiated this action by filing a complaint pursuant to 28 U.S.C. § 1331 and § 1343. (Doc. 1). On May 10, 2024, Bishop filed the operative third amended complaint, a claim under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C § 185. (Doc. 60). For the following reasons, Defendants' motions to dismiss shall be **GRANTED** and Bishop's claims will be **DISMISSED WITH PREJUDICE**. (Doc. 64; Doc. 66).

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

The following background and factual summary are taken from Bishop's third amended complaint. (Doc. 60). At all times relevant to this action, Bishop was a tenured full-time professor at the University and a member of the bargaining unit represented by the FAC. (Doc. 60, ¶¶ 7, 20, 26). All parties were bound by the provisions of the Faculty Handbook of the University. (Doc. 60, ¶¶ 8-11). The Faculty Handbook governs the relationship between the University and its faculty, including the practices and policies for the dismissal of a tenured

professor. (Doc. 60, ¶¶ 11-12; Doc. 60-1). The Faculty Handbook also contains the FAC's complaint and grievance process.[1] (Doc. 60, ¶¶ 51). In response to the COVID-19 pandemic, the University and the FAC implemented a policy called "Royals Back Together" ("RBT policy"), which required students and faculty to both wear high-grade masks and provide attestation that they had received the COVID-19 vaccination. (Doc. 60, ¶¶ 13, 14). Despite being fully vaccinated, Bishop alleges he was concerned about the ethics of the policy and therefore took several measures to oppose it, including refusing to sign the University's attestation form. (Doc. 60, ¶¶ 15, 17, 18). Because of his opposition, Bishop alleges he was terminated from the University on May 10, 2022, without being able to appear at his dismissal hearing or being offered due process. (Doc. 60, ¶¶ 27, 34, 36, 39). Bishop also alleges that throughout his termination and his appeal, the FAC failed to fairly represent him. (Doc. 60, ¶¶ 74-81).

On November 16, 2022, Bishop filed a complaint against the University, Provost Jeffrey Gingerich, and the FAC. (Doc. 1). The complaint was dismissed by this Court on July 17, 2023. (Doc. 31). Bishop filed a second amended complaint on September 8, 2023. (Doc. 38). On April 25, 2024, this Court dismissed Bishop's second amended complaint. (Doc. 58; Doc. 59). On May 10, 2024, Bishop filed the operative third amended complaint. (Doc. 60).

---

[1] According to Sec. 16.0 of the Faculty Handbook, faculty members are entitled to file allegations of violations of the Faculty Handbook with the FAC. (Doc. 1, at 57). This includes for matters related to termination. (Doc. 1, at 58). To make an allegation, the faculty member must first file a complaint with the FAC, which serves as the "initial allegation." (Doc. 1, at 58). This complaint is then investigated, and based on this investigation, the FAC seeks to resolve the matter with the complainant. (Doc. 1, at 58). If the complaint cannot be resolved, it progresses to the grievance stage. (Doc. 1, at 58). Grievances are dually investigated and resolution is again sought with the complainant. (Doc. 1, at 58). If the grievance cannot be resolved, it is submitted to arbitration, held under the voluntary arbitration rules of the American Arbitration Association. (Doc. 1, at 59).

Therein, Bishop alleges the following Counts: Count I--Breach of Contract in violation of 29 U.S.C. § 185 against the University ("Section 301 termination breach of contract claim") (Doc. 60, ¶¶ 68-75); and Count II—Breach of Duty of Fair Representative against the FAC ("fair representation claim") (Doc. 60, ¶¶ 76-83).

On June 10, 2024, the University filed a motion to dismiss the third amended complaint, as well as a brief in support. (Doc. 64; Doc. 65). On the same day, the FAC filed a motion to dismiss the third amended complaint pursuant to Rule 12(b)(6), as well as a brief in support. (Doc. 66; Doc. 67). On June 24, 2024, and June 25, 2024, respectively, Bishop filed briefs in opposition to Defendants' motions to dismiss. (Doc. 68; Doc. 69). The University filed a reply brief on July 3, 2024, and the FAC filed a reply brief on July 8, 2024. (Doc. 68; Doc. 69). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court

need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

In his third amended complaint, Bishop asserts a claim under Section 301 of the LMRA. (Doc. 60, at 17-19). Section 301 provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). "When resolution of a state-law claim is substantially dependent upon the analysis of the terms of a collective-bargaining agreement, that claim must either be treated as a [Section] 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). Because Bishop's claim against the University is "substantially dependent" upon an analysis of the terms contained in the Faculty Handbook, a collectively bargained for agreement, his claims must be treated as Section 301 claims.

A claim brought under Section 301 may be "pure" or "hybrid." *Service Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 94 n.2 (3d Cir. 1992). This case involves a

4

"hybrid" claim, meaning it was brought by an employee against their employer for an alleged breach of a collective bargaining agreement and an alleged violation of the union's duty of fair representation.[2] *See Service Employees Int'l Union Local 36,* 982 F.2d at 94 n.2. As such, to prevail on his "hybrid" Section 301 claim, Bishop must show both (1) that the FAC violated its duty of fair representation, and (2) the University breached its collective bargaining agreement. *Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x 146, 148 (3d Cir. 2011) (quoting *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir.1993)). Because these factors are "inextricably interdependent," Bishop must provide that the University breached the Faculty Handbook in order to prevail on the breach of duty of fair representation claim, and *vice versa*. *Felice*, 985 F.2d at 1226 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981)). Considering this, while Bishop alleges specific Counts against the University and the FAC, his claims are interdependent. (Doc. 60) Accordingly, the University and the FAC's motions to dismiss raise many of the same issues and the Court will consider them together. (Doc. 64; Doc. 66).

    A. BREACH OF THE COLLECTIVE BARGAINING AGREEMENT

Defendants argue that Bishop's "hybrid" Section 301 claim is time-barred. (Doc. 65, at 15-17). To bring a claim under Section 301, there is a six-month statute of limitations that starts as soon as the plaintiff receives notice the union will not proceed with their grievance. *See Albright v. Virtue*, 273 F.3d 564, 572-73 (3d Cir. 2001) (providing that the statute of limitations begins to run when the plaintiff receives notice that the union will not be proceeding with the grievance). While statute of limitations is technically an affirmative

---

[2] A "pure" claim is one brought by a union against an employer. *Service Employees Int'l Union Local 36,* 982 F.2d at 94 n.2.

defense, it may be properly raised at the motion to dismiss stage when the defense is apparent from the pleadings. *See Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Even though typically on a motion to dismiss courts may not consider evidence presented outside of the pleadings without converting the motion to a summary judgment motion, an exception is made for "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In this case, all parties refer to a May 3rd email ("the Email") Provost Jeff Gingerich and the FAC Chair, Stacey Muir to Bishop in making their statute of limitations arguments. (Doc. 65, at 4; Doc. 68, at 20; Doc. 69, at 20; Doc. 71, at 10). As the parties do not dispute the Email's authenticity, the Court will consider it in its statute of limitations determination. *See Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91-92 (3d. Cir. 2012) (finding no reversible error where the district court used limited discoverable material for the purpose of clarifying a statute of limitations question and dismissing a complaint); *see McNaney v. Sampson & Morris Grp., Inc.*, No. 2:21-CV-1809, 22 WL 1017388, at *4 (W.D. Pa. Apr. 5, 2022) (finding claims to be untimely after considering emails attached to defendants motion to dismiss without converting the motion to a motion for summary judgment and pointing to the fact that the plaintiff never disputed the authenticity of the emails). Bishop asserts that the statute of limitations for his "hybrid" Section 301 claim "began to run when he was notified of the outcome of his complaint and was made aware that FAC would no longer be pursuing his grievance." (Doc. 68, at 19; Doc. 69, at 19). Bishop concedes the Email "made it clear that [Bishop's] grievance would not be investigated further." (Doc. 69, at 19). Still, Bishop avers that "he had no reason to believe that the internal union procedures would be

inadequate to address his complaint." (Doc. 69, at 20). Because Bishop filed a complaint against the FAC on July 19, 2022, and filed his complaint with this Court on November 16, 2022, Bishop asserts that his "hybrid" Section 301 claim is timely. (Doc. 69, at 20).

As this Court previously discussed in its April 26, 2024, Memorandum, this argument fails. (Doc. 58). The same rationale underlying this Court's dismissal of Bishop's due process Section 301 claim applies to his hybrid claim. (Doc. 58). Bishop received unambiguous notice that the FAC would not pursue his grievance on May 3, 2022. (Doc. 65, at 20). He filed this lawsuit six months and thirteen days later, on November 16, 2022. (Doc. 1). Thus, Bishop filed his lawsuit after the six months statute of limitations had run.

As stated by the Third Circuit, "[i]f repeated requests to a union to institute a grievance were to perpetually toll the statute of limitations, despite the employee's belief that such requests were futile, the statutory time bar would be illusory." *Vadino v. A. Valey Engineers*, 903 F.2d 253, 262-63 (3d Cir. 1990). Thus, Bishop's repeated attempt to assert a grievance in his July 19, 2022, FAC complaint did not toll the statute of limitations for his "hybrid" claim under Section 301. *See Vadino*, 903 F.2d at 262-63. Accordingly, Bishop's "hybrid" claim under Section 301 of the LMRA is time-barred and will be **DISMISSED WITH PREJUDICE**.

B. BREACH OF THE DUTY OF FAIR REPRESENTATION

The parties next dispute whether the FAC violated its duty to fairly represent Bishop. (Doc. 65; Doc. 67; Doc. 68; Doc. 69). The duty of fair representation imposes an obligation upon unions to "serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A breach of the statutory duty of fair

7

representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. "The mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious." *Bangura v. PA Soc. Servs. Union--SEIU 668*, No. CIV.A. 12-3110, 2012 WL 6628045, at *3 (E.D. Pa. Dec. 20, 2012) (quoting *Findley v. Jones Motor Freight*, 639 F.2d 953, 958 (3d Cir. 1981)). Instead, "proof of arbitrary or bad faith union conduct in deciding not to proceed with the grievance is necessary to establish lack of compliance with the fair representation." *Marrero v. Brin*, 536 F. App'x 270, 273 (3d Cir. 2013)

A union's actions will only be deemed arbitrary if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 471-472 (3d Cir. 2018) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Such a "'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (quoting *Air Line Pilots Ass'n Int'l*, 499 U.S. at 67). To show discrimination on the part of the union, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos*, 748 F. App'x at 472 (quoting *Addington v. U.S. Airline Pilots Ass'n*, 791 F.3d 967, 984 (9th Cir. 2015) (internal quotation marks omitted)). To show bad faith on the part of the union, a plaintiff must put forth "a showing of fraudulent, deceitful, or dishonest action." *Bakos*, 748 F. App'x at 472 (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)).

8

According to Bishop, the FAC handled his complaint and grievance "in a perfunctory manner," because he "received no further explanation as to why his grievances were not meritorious," aside from "boilerplate language" indicating that the FAC found no evidence of a University violation, and because the FAC made no investigation beyond an initial interview. (Doc. 68, at 14-16; Doc. 69, at 14-16). Bishop alleges that the FAC acted in this way "because Bishop's ideological views regarding COVID-19 and the University's were not aligned." (Doc. 68, at 17; Doc. 69, at 17). Since Bishop "was a conservatively-aligned faculty member who openly opposed RBT and did not belong to the union," he alleges that the "FAC intentionally discriminated against [him] and treated him differently than other members of the bargaining unit." (Doc. 68, at 17; Doc. 69, at 17).

In making this point, Bishop attempts to allege he was treated differently than another tenured professor at the University, Nathan Lefler ("Lefler"). (Doc. 60, ¶¶ 22-32; Doc. 68, at 14; Doc. 69, at 14). Broadly, Bishop alleges the "FAC refused to use informal means to preserve [Bishop's] job, despite the fact that it had done so for Lefler." (Doc. 60, ¶ 31). Lefler, like Bishop, "strongly opposed RBT and refused to sign a COVID-19 attestation form in violation of the policy." (Doc. 60, ¶ 26; Doc. 68, at 14; Doc. 69, at 14). Bishop also alleges that Lefler was a member of the FAC, while Bishop was a member of the collective bargaining agreement. (Doc. 60, ¶ 26). In resolving Lefler's opposition to the RBT plan, Bishop alleges the "FAC used informal means to negotiate with the University to preserve Lefler's employment. As a result, the University did not institute disciplinary termination measures against Lefler. Lefler is still employed by the University today." (Doc. 60, ¶ 23).

Both the University and the FAC argue that Bishop's breach of the duty of fair representation claim must fail despite Bishop's new allegations implicating Lefler. (Doc. 65,

at 15). Defendants argue that Bishop failed to allege that he and Lefler were similarly situated, that the alleged difference in treatment was based on Bishop's political beliefs, or any other facts sufficient to show that the FAC acted unreasonably. (Doc. 65, at 17; Doc. 67, at 11). The University makes clear that the FAC intervened to help Lefler *comply* with the RBT plan, they did not grant him an exemption from its requirements. (Doc. 67, at 12).

As this Court has previously stated, Bishop alleges notably few facts to support his claim that the FAC violated its duty of fair representation beyond "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, 908 (3d Cir.1997). The Court therefore agrees that Bishop has failed to set forth allegations from which the Court can draw a reasonable inference that the FAC acted arbitrarily, as there are no new facts in the third amended complaint to suggest that the FAC acted outside the "wide range of reasonableness" afforded to unions. *Marquez*, 525 U.S. at 46. Bishop also fails to allege that the FAC acted in bad faith, as he has not specified any fraudulent or deceitful conduct by the FAC in conjunction with its handling of his termination grievance. (Doc. 68; Doc. 69).

Even with his new allegations implicating Lefler Bishop's claim must fail. Bishop has failed to allege that Lefler is a true comparator to support his disparate treatment claim. Bishop does not allege the two professors are similarly situated, instead alleging that, at Lefler's request, the FAC intervened informally on his behalf to come to a resolution that involved teaching his course online. (Doc. 60, ¶¶ 20-27). According to the third amended complaint, Bishop made no similar request, and as he alleges, same solution offered to Lefler would not have been amenable to Bishop. (Doc. 60, ¶ 28). Bishop therefore has failed to allege discriminatory conduct by the FAC, as he has not shown that Lefler is a true comparator for purposes of his fair representation claim. See *Bakos v. Am. Airlines, Inc.*, 266 F. Supp. 3d 729,

744 (E.D. Pa. 2017), *aff'd* 748 Fed. Appx. 468 (3d. Cir. 2018) ("'[A] showing that union action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation' given that 'a union by necessity must differentiate among its members in a variety of contexts.'") (quoting *Flight Attendants in Reunion v. Am. Airlines*, 813 F.3d 468, 473 (2d Cir. 2016)).

As Bishop has failed to allege that the FAC handled his termination grievance in a way that was arbitrary, discriminatory, or in bad faith, he has failed to allege that the FAC violated its duty of fair representation. (Doc. 60); *see Bakos*, 748 F.App'x at 472 (finding the district court properly dismissed a claim for a breach of the duty of fair representation where plaintiff failed to allege Defendants had acted arbitrarily or in bad faith). Accordingly, to this extent, Defendants' motions to dismiss will be **GRANTED** and Bishop's fair representation claim will be **DISMISSED WITH PREJUDICE**. (Doc. 64; Doc. 66); *see Stouffer v. Union R.R. Co., LLC,* No 2:20-CV-00133-RJC, 2021 WL 1197528, at *8 (W.D. Pa. Mar. 30, 2021) (dismissing a breach of duty of fair representation claim where plaintiff's allegations were largely based on labels and conclusions).

C.  BISHOP'S SECTION 301 TERMINATION BREACH OF CONTRACT CLAIM

The parties next dispute whether Bishop's termination violated the Faculty Handbook. (Doc. 60, ¶¶ 74-81; Doc. 42, at 12-13; Doc. 45, at 16-19; Doc. 48, at 9-21; Doc. 49, at 9-21; Doc. 54, at 8-15). As discussed *supra*, because this breach of contract claim is a "hybrid" claim under Section 301, Bishop must show both (1) that the union violated its duty of fair representation, and (2) the employer breached the collective bargaining agreement. *Johnson v. Laundry Workers LCL 141 & Agents,* 419 F. App'x 146, 148 (3d Cir. 2011). Because Bishop has failed to allege the FAC violated their duty of fair representation, he cannot prevail on his

claim that the University breached the Faculty Handbook and therefore his Section 301 termination breach of contract claim must be **DISMISSED WITH PREJUDICE**. *See Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x at 148 (affirming the district court's decision that because a plaintiff could not establish a breach of the collective bargaining agreement at issue, she could not maintain a claim for breach of the duty of fair representation).

D. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

A district court is justified in denying leave to amend if amendment would be "inequitable or futile" or upon "[a] plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed . . . .'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (quoting *Connelly v. Steel Valley Sch. Dist.*, 706 f.3d 209, 217 (3d Cir. 2013); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)). Bishop's claims against the University and the FAC are to be dismissed with prejudice. Bishop has made multiple attempts to state plausible claims for relief, and he is no more successful this time than those before. Due to his "repeated failure to cure deficiencies by amendments previously allowed," the Court will not grant Bishop leave to file a fourth amended complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Doc. 64; Doc. 66) are **GRANTED**. Bishop's third amended complaint is to be **DISMISSED WITH PREJUDICE**. (Doc. 60).

An appropriate Order follows.

                                              **BY THE COURT:**

**Dated: March 14, 2025**                           *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States District Judge**